UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

IN RE:

SHEREE D. HORTON,

    Debtor.
_____/

Case No. 15-47891-WSD
Chapter 13
Hon. WALTER SHAPERO

SHEREE D. HORTON,

    Plaintiff,

v.

WAYNE COUNTY TREASURER and
ATOMIC STAR, LLC,

    Defendants.
_____/

Adv. Pro. 15-04954-WSD

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Background

In 2011, Debtor purchased real property located at 17521 Roselawn in Detroit, Michigan ("the Property") and, incident thereto, assumed the past due property taxes for 2009 and 2010. Around March 1, 2013, the Wayne County Treasurer ("Treasurer") filed a Certificate of Forfeiture as to the 2011 taxes in the Wayne County Circuit Court ("State Court"). On March 27, 2014, Debtor and the Treasurer entered into a written signed Stipulated Payment Agreement ("Agreement"). The Agreement provided that, in order to avoid foreclosure, the Debtor must make the following payments: (a) $3,000 on the Agreement's execution date of March 27, 2014; (b) $126 on May 7, 2014; and (c) $630 on each of June 4, 2014, July 9, 2014, August 6, 2014,

1

September 10, 2014, October 8, 2014, November 5, 2014, and December 10, 2014.[1] Debtor initialed under a section that states "I realized these payments must be made on/before due dates." The Agreement also provides "If Taxpayer has satisfied the minimum payment obligation of 60% of 2011 and prior TIPF [taxes, interest, penalties and fees] by June 4, 2014, the subject property shall be removed from the above Petition of Foreclosure and from the list of properties to be auctioned by the Treasurer in 2014." The Agreement also stated, in apparent reference to the initial $3,000 payment, "48% paid upon signing this Stipulated Agreement (Installment #1)". As to the latter, if the initial payment of $3,000 equaled 48% of the debt (as the Agreement on its face seems to state), then mathematically, the total amount of the debt must have been $6,250. If that was so, the initial $3,000 payment, together with the $126 payment due on May 7, 2014 and the $630 due on June 4, 2014, if paid, totaled $3,756, which is almost precisely 60% of the indicated $6,250.

The Debtor in fact made the initial $3,000 payment on March 27, 2014 upon executing the Agreement but made no other payments up to and including June 4, 2014 (a payment of $39.47 was made on Debtor's behalf on August 14, 2015). The Treasurer then proceeded to a judicial auction of the Property, incident to which it first recorded a Notice of Judgment of Foreclosure on September 8, 2014. Atomic Star, LLC purchased the Property by tax deed on October 21, 2014 and the Treasurer transferred title to Atomic Star, LLC via a quitclaim deed as of that date.

---

[1] The State Court did in fact grant the Treasurer an Uncontested Judgment of Foreclosure as to the Property on March 28, 2014. The reasons for this appear to be the facts that the Treasurer was contemporaneously foreclosing on a large number of other unrelated parcels and, given the timing of the Debtor signing the Agreement with the Treasurer, the Treasurer was unable to remove Debtor's property from the proposed order (which had already been prepared) before the State Court signed it. Regardless, the understanding between Debtor and the Treasurer was that the Treasurer would remove the Property from foreclosure if Debtor complied with the Agreement.

Debtor filed this Chapter 13 petition on May 20, 2015 and, on September 30, 2015, filed this adversary proceeding against the Treasurer and Atomic Star, LLC, seeking to (a) determine that Debtor is the legal fee simple owner of the subject property, subject to any outstanding taxes or liens; (b) set aside the Notice of Judgment of Foreclosure; and (c) set aside the Quit Claim Deed executed by the Treasurer to Atomic Star, LLC. In this adversary proceeding, Debtor argues that she abided by the terms of the Agreement by making sufficient payments, and thus the Treasurer should never have finalized the foreclosure process and thereafter auctioned the Property. Debtor argues the 60% threshold was met if one factors in a $2,580 payment she previously made to the Treasurer on March 7, 2014, prior to the signing of the Agreement. The Treasurer believes that $2,580 payment should not be included in the 60% computation, particularly because that payment was made before the Agreement was even executed. The Treasurer filed the present Motion for Summary Judgment, arguing, among other things, that the *Rooker-Feldman* doctrine precludes Debtor from proceeding with this adversary proceeding. Atomic Star, LLC concurred in the Treasurer's Motion.

Summary Judgment Standard

Fed.R.Civ.P. 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. "Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." *Kalamazoo River Study Group v. Rockwell Intern. Corp.*, 171 F.3d 1065, 1068 (6th Cir. 1999) (internal citation omitted). The Court should draw all justifiable inferences in favor of the non-moving party and it should not determine credibility or weigh evidence. *Id.* "[T]he mere existence of *some* alleged factual dispute between the parties

3

will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis original). "There is no genuine issue of material fact when 'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Williams v. Leatherwood*, 258 Fed. Appx. 817, 820 (6th Cir. 2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)).

Discussion

Notwithstanding any asserted issues as to contractual or computational ambiguities incident to the Agreement, the Court is constrained to agree with the Treasurer that the *Rooker-Feldman* doctrine precludes Debtor's adversary proceeding. That doctrine was described by *In re Singleton*, 230 B.R. 533, 536-37 (B.A.P. 6th Cir. 1999) as follows:

> *Rooker/Feldman* is a limitation on subject matter jurisdiction in federal courts. *See Blanton v. United States,* 94 F.3d 227, 233–34 (6th Cir.1996) ("Lower federal courts have no jurisdiction directly to review final decisions of the courts of a state or similar jurisdiction in judicial proceedings.") (citing *Feldman,* 460 U.S. at 476, 103 S.Ct. 1303; *Atlantic Coast Line R.R. v. Brotherhood of Locomotive Eng'rs,* 398 U.S. 281, 296, 90 S.Ct. 1739, 1747–48, 26 L.Ed.2d 234 (1970)). The doctrine complements the statutory jurisdictional scheme of the federal courts, including 28 U.S.C. § 1257, that limits federal review of state court proceedings to the United States Supreme Court. *See also* 28 U.S.C. § 1331 (federal district courts are courts of original jurisdiction); 28 U.S.C. § 1343 ("The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person....").
>
> "The '*Rooker–Feldman* ' Doctrine bars a lower federal court from conducting a virtual 'review' of a state court judgment for errors in construing federal law or constitutional claims 'inextricably linked' with the state court judgment." *Morrow v. Torrance Bank (In re Morrow),* 189 B.R. 793, 808–09 (Bankr.C.D.Cal.1995) (footnotes omitted). The state and federal claims need not be identical for the doctrine to apply.

"The doctrine 'is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and

4

inviting district court review and rejection of those judgments.' For *Rooker–Feldman* to apply, the party asserting claims in federal court must have first lost in state court." *In re Kapla*, 485 B.R. 136, 143 (Bankr. E.D. Mich. 2012) (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005)) (*aff'd*, 12-4000, 2014 WL 346019 (E.D. Mich. Jan. 30, 2014)). The *Kapla* Court applied this standard to an analogous situation, and in doing so opined:

> The allegations of fact in the Debtor's complaint in this adversary proceeding virtually all relate to the foreclosure sale of the Property. Counts I and II of the complaint specifically request the Court to set aside the foreclosure sale and allow the Debtor to retain possession of the Property. These counts directly challenge the State Court Judgment, which awarded possession of the Property to Fannie Mae based upon the deed that it received from the successful purchaser at the foreclosure sale. It is hard to see how any of the Debtor's claims attacking the foreclosure sale could be heard by this Court without this Court having to review the State Court Lawsuit and then make a finding that the State Court Judgment wrongly decided the issues before the state court. Therefore, the Court lacks jurisdiction over counts I and II of the Debtor's complaint.

485 B.R. at 144.

Debtor's adversary proceeding is a separate federal action filed for the sole purpose of setting aside the Judgment of Foreclosure entered by the State Court and undoing property transfers effectuated thereby under the auspices of the State Court's judicial foreclosure process. In doing so, Debtor is asking this Court to not only deal with issues that are inextricably entwined with the State Court proceedings, but to effectively act as an appellate court and reverse the State Court because of what Debtor sees as errors in those proceedings.

Debtor seeks to circumvent the *Rooker-Feldman* doctrine by arguing that the State Court's rulings were void *ab initio*, but does not explain why they were void *ab initio*. It is one thing for a court to issue an incorrect ruling, but it is quite another for a court to lack the basis to issue the ruling in the first place (whether because of a lack of jurisdiction or some other issue of similar import). *See In re Goodman,* No. 14-62333, 2015 WL 3507119, at *4 (Bankr. N.D. Ohio June 1,

2015). Should the $2,580 have been added to the $3,000 payment in computing the 60% threshold? Was the indicated $6,250 the balance due *after* having already deducted the $2,580 from a larger number and thus represented the actual net amount due after crediting Debtor for that payment as of the date the $3,000 was paid? If Debtor was not given credit for that amount but should have been, that would have made the 48% figure in the Agreement arithmetically incorrect in the first place, notwithstanding those questions. The basic point (somewhat unfortunately for the Debtor if the latter was the case) is that unfortunately none of those possibilities or scenarios present a *legal* basis for concluding the resulting judgment and sale should be characterized as being void *ab initio* or presenting a case of a lack of jurisdiction in the State Court. Thus the *Rooker-Feldman* doctrine applies here. That is particularly so, taking into account the fact that Debtor did not act promptly by filing her bankruptcy petition and raising the issue involved here until some 11 months after the critical June 4, 2014 date and some 7 months after the foreclosure and sale dates and, importantly, the consequent involvement of a third party purchaser at the tax sale. Debtor's complaints and remedies could (and should) have been pursued through a timely appeal or other relief sought in the state courts. Her failure to have done so additionally militates in favor of applying *Rooker-Feldman* to this case. Parenthetically, if the Court were to decide the merits of this case on the basis of the face of the Agreement, its plain terms state that as of the Debtor's payment of the initial $3,000, she was then 48% paid, and would achieve the 60% threshold upon paying the required May and June 2014 payments (which she did not make).

    Something further needs to be said in this case. The Treasurer is on public record in adopting policies that are taxpayer-friendly and aimed at doing what can be done to alleviate loss of homes in meritorious cases, consistent with the need of the taxing authorities to ensure tax

collections. This may well be such a case. But being even able to consider affording this particular Debtor some sort of relief is complicated by the fact that a third party purchased the Property at a tax auction. That might present practical and legal difficulties not present in an otherwise meritorious situation that could preclude being able to afford the Debtor relief absent the cooperation of the tax auction purchaser. That is something the Court leaves to the parties.

The Motion for Summary Judgment is granted and the Court is contemporaneously entering an appropriate order.

**Signed on June 27, 2016**

                                                **/s/ Walter Shapero**
                                     **Walter Shapero**
                                     **United States Bankruptcy Judge**